Case number 21-5238 Jarinnslerth Orozco, appellant v. Merrick B. Garland, Attorney General of the United States in his official capacity. Ms. Gilbride, appellant. Good morning, may it please the court, Carla Gilbride on behalf of the appellant Jarinnslerth Orozco. Good morning. Morning. Congress amended Section 508 of the Rehabilitation Act in 1998 to ensure that people with disabilities who are federal employees or members of the public seeking information from the government can access and use technology in a manner comparable to people without disabilities. And Congress specified within Section 508 itself both who has a right to such access, people with disabilities, and who has an obligation to provide it, federal departments and agencies. The only thing Congress borrowed from Section 505 of the Rehabilitation Act is language about how that right to technological equality is to be enforced, specifically by incorporating the procedures, remedies, and rights first recognized in Title VI of the Civil Rights Act and added to Section 505 in 1978. This isn't the first time Congress has incorporated that precise remedial language from Title VI into later civil rights statutes. And the Supreme Court explained in Consolidated Rail Court v. Darin how that borrowed language is to be interpreted. Only the remedies, procedures, and rights themselves are to be borrowed from the earlier statute. Who may enforce those rights and against whom they may be enforced is not part of what is borrowed. Instead, courts are to look to the more recent borrowing statute for that scope of coverage. And here, the more recent borrowing statute is Section 508. And when we look to the text of Section 508, we find three references to federal employees and nearly 20 references to federal departments and agencies. But we don't find a single reference to federal financial assistance. What about the fact that federal department or agency is not referenced in Section F3, where they talk about civil actions, even though it's mentioned in 1 and 2? The government argues that that's significant. Well, when we look at Section F3 of 508, it refers to individuals with disabilities filing a complaint under Section F1. And so I think what Congress is saying there is you refer back to Section F1 to determine which individuals with disabilities are able to file complaints under that subsection. And when we get to F1, we do find federal departments and agencies referenced. So F3 itself sends you back to F1 and is intended to be coextensive in who it is protecting, in who it is giving rights to. F1 says you have a right to file an administrative complaint. The details of that administrative complaint regime are spelled out in more detail in F2. And then in F3, the same group of people, the same who, individuals with disabilities alleging that a federal department or agency is not in compliance with Section A1, that same group of people are permitted to file a civil action in federal court under, and now here's where we get to the borrowed language, the how language, using the remedies, procedures, and rights available under Section 505A2. And that available language is important. If you look at the words, the remedies, procedures, and rights available to, you see that same language in Section 508F3. And you see that same language in Section 505A2 when it in turn was acting as the borrowing statute, when it in turn was borrowing remedies, procedures, and rights from Title VI and applying those remedies, procedures, and rights to the newly expanded Section 504 of the Rehabilitation Act back in 1978. When the Supreme Court looked at that available to language in 1984 in the Consolidated Rail case, it said, okay, we're going to figure out, you know, what is borrowed from Title VI. The issue there was only federal agencies and federal grants that were at the primary purpose of aiding employment were covered under court's interpretation of Title VI. But here, I would suggest that, you know, we always look at statutes and we read the text, and the plain language of the text does not reference federal employees, and Congress could have easily added that language and brought it down into statutes instead of us kind of playing this dancing around game, looking to the borrowing statutes. So what should we make of that? With respect, the borrowing statute here, Section 508, does mention federal employees. It mentions federal employees right in the beginning in Section A1. It talks about two groups of people, you know, who must be provided comparable use and access to technology. But that language is not carried down further when you get to F3. That's true. The language in F1 and in F3 is any individual with a disability. That's a broad language. I would say that in A1, any individual with a disability is sort of subdivided into two groups. If you look at A1, Roman numeral I, it says individuals with disabilities who are federal employees. And then Roman numeral II under A1 is individuals with disabilities who are members of the public. So those are the two subsets of individuals with disabilities that Congress was concerned with in Section 508. And both of those groups, both of those individuals with disabilities, is sort of the catch-all term. Individuals with disabilities who are employees or members of the public are included in Provision F, the enforcement provision. So part of your argument, I take it, is that if Congress had meant to just limit it to individuals with disabilities who are members of the public seeking information or services from an agency, they knew how to say that in 794D or what you call 508A1A, Roman numeral II, and they did not include that same narrowing language in III. Of course. That's exactly right. And there are places within Section 508 where Congress did want to specify only members of the public. We mentioned several of those in our opening brief. And where they want to limit to members of the public, they do so by using those specific words. But when we get down to Section F, we instead have the broad, capacious language of individuals with disabilities, all of them. And, you know, another point that we made in our brief is that if you so limit it to only members of the public, you know, and add in this additional prerequisite that appears nowhere in Section 508's text, that there be some condition of the federal department or agency being acting in its role of a federal provider of financial assistance, that would largely write out much of what Section 508 was concerned with, which was access to technology for employees with disabilities. How do you distinguish our decision in Taylor versus Small, which was important to the district court here? So Taylor was looking at the coverage of Section 504 and whether it applied to federal employees. And it looked at the differences between Section 504 and 501. And Section 501 provides a scheme for seeking reasonable accommodations for employees with disabilities. And here, Section 508, in some respects, is different from both 504 and 501. It doesn't talk about accommodations like 501 does. It talks about procuring, using, developing, and maintaining technology. But it does encompass federal employees within its plain text. And federal employees are mentioned repeatedly. Certainly, if you look to the legislative history, you know that that is what Congress was concerned about, was barriers faced by employees. But even within the text itself, federal employees are called out on multiple occasions. And just to quickly finish the point I was making earlier about consolidated braille, there was a distinction made by the Supreme Court in that case between the remedies. So the back pay remedy came forward from Title VI into Section 504, because it was a remedy procedural right. And that language came forward from Title VI, which was at that point the borrowing statute, and coming forward into the later enacted statute, Section 505. But what did not come forward was the limitation on what sorts of agencies and what sort of providers of federal financial assistance were covered. The court said there, for who is covered, we look to the later statute. And so here, we look to who is covered under Section 508, which says nothing about federal financial assistance, providing federal financial assistance. It simply refers to federal departments and agencies as the obligation holders, and individuals with disabilities, including individuals who are federal employees, as the right holders. Should we give any deference to the DLJ's past information with respect to federal government employment liability under 508? Well, I don't know that it's necessary to give deference where the text is straightforward here, but it is significant, and we mentioned in our brief, that the DLJ has previously taken the position that federal employees are covered by Section 508 in their role as, that federal employers, I should say, are covered in their role as employers by 508. And the department has previously taken that position. I'll reserve the balance of my time. Let me ask one thing, Ms. Gilbride. My impression is that this is not entirely unusual for Congress to refer back to Title VI or 505, which then refers to Title VI, when they want to create a cause of action. Do you have a sense of why they do that, rather than just writing a complete cause of action into a section like 508? I think I wouldn't want to speak for the intent of Congress, but I think there is a desire for uniformity or consistency across multiple civil rights statutes across time, and this is not the only occasion on which Congress has done this and incorporated the specific language from Title VI through Section 505. Congress did the same thing when they enacted the ADA in 1990, and we point to the Schatz case in our reply brief from the 11th Circuit. Where the 11th Circuit said, because the scope of coverage of the ADA is broader, it doesn't just cover providers, the government when it's providing federal financial assistance. It applies to all state and local public entities. If we limited the scope of coverage to what 505 and Title VI encompass, you'd basically make the entire ADA superfluous. That certainly wasn't what Congress intended, and that is the same here with Section 508. But I think the goal of mentioning those earlier enacted statutes for their remedial provisions is to ensure consistency across statutes with regard to non-discrimination obligation. And what do you make that in Section F2, there's administrative complaints, and then next it says civil actions. And so there seems to be an intentional distinction between the two. I think you're correct that there are two schemes or two methods of seeking enforcement. One is directly through the agency with an administrative complaint filed through the, as Mr. Orozco did here. And there's also, that's what F1 and F2 are talking about. And there is also a parallel provision allowing for access to the civil courts through a civil action. And that's what F3 is talking about. So it's a dual track. Is that a suggestion that even under the administrative complaint process, there's no exhaustion required? I don't think there was some discussion at the district court about whether there is an exhaustion requirement and whether Mr. Orozco met it. We don't think that hasn't been briefed before this court and it wasn't a basis of the district court's decision. But if this court does consider there to be or find the need to reach the question of whether there's an exhaustion requirement, we certainly think Mr. Orozco did all he was required to do before the FBI filing his complaint, both with the office of the chief information officer and with the EEO office, sent it multiple times and was told that his complaint was dismissed because it was not within the purview of the EEO office to deal with the Section 508 complaints. And the sort of unsatisfactory results that Mr. Orozco had when he tried to seek relief through the agency, I think demonstrates why Congress thought the dual track of having both an administrative complaint procedure, which may work in some circumstances, and a civil action procedure under the statute to add to its enforcement powers. It shows why Congress felt that that was necessary in 1998 to strengthen and enhance enforcement under the statute. Ms. Gilbride, I think that your argument is strong, but it's a close question. It's a hard statutory interpretation question. If we conclude tentatively that the exhaustion question is much more straightforward, what's your best argument for why we shouldn't ask for a supplemental briefing on the exhaustion question? And then if our instinct is confirmed that the exhaustion question is straightforward, we would affirm on that. What's your argument why we shouldn't ask for the supplemental briefing? Well, certainly, you know, the court could ask for a supplemental briefing. If you're asking as a legal matter, is exhaustion required? I think the record, it's already before the court that it's a legal matter on what Mr. Orozco did to bring his complaints before the agency. I think that's adequately presented to you. And I guess my other argument is that, you know, the district court did not reach that issue. There seems to be, you know, uncertainty within the district courts as to this statutory interpretation question about whether a private right of action exists to go to civil court under Section 508F3. Despite our view that language is straightforward, some courts have reached the opposite conclusion. And so we would ask this court to decide the issue, to allow litigants to understand what their rights are and that they may proceed accordingly. But certainly if this court requests supplemental briefing on administrative exhaustion, we would be happy to provide it. It's not jurisdictional. He filed a complaint and served it so there's nothing jurisdictional about it in this case. We don't have to decide. That's correct, Your Honor. Questions? I'll reserve the balance of my time. Well, I think you don't have any left, but we will give you a couple minutes. Thank you for... Good morning. Good morning. May it please the court. As the court's been discussing this morning, Section 508 of the Rehabilitation Act allows certain members of the public and federal employees with disabilities    or a person with a disability or a person with a disability to file complaints of the agency's electronic and information technology. Section 508's enforcement provision, as Judge Childs has noted for us, requires the agencies to process these administrative complaints using particular procedures. But Section 508's enforcement provision in subsection F3 does not unambiguously waive sovereign immunity for civil actions by employees complaining about the technology systems used in their employment. The court has spent time this morning talking about the incorporation that F3 does to create its rights, remedies, and procedures, and that is key language. I think it's also key to point out that the limitations to recipient of federal assistance or a federal provider of such assistance, which are part of 794A, those limitations were in existence when the Supreme Court decided Lane v. Pena in 1996, which was two years before the statute was amended by Congress. Well, she's not seeking, excuse me, he's not seeking, Nebraska is not seeking damages, which was the issue in Lane v. Pena, and in fact, there's no question there, the injunctive action did go forward. And your waiver of sovereign immunity at a bare minimum would be subject to the Administrative Procedure Act. So I'm not sure how Lane helps you here, because it was very much, very deliberately and repeatedly in the language used in the Supreme Court talking about a waiver for money damages, which of course you don't get under the APA. So I'm not sure how that helps you. In fact, it probably hurts you because there was also an injunctive action in that case that did go forward. There was injunctive action that the government didn't challenge. It said it was appropriate. Yeah, it says a lot when the Solicitor General doesn't challenge something. I mean, if it was barred by sovereign immunity, the federal government had no choice but to raise the issue. It would have been jurisdictional. Now, the Solicitor General obviously was of the position that it wasn't barred because that's why it wasn't raised. It wouldn't have been optional. I can agree with that, Your Honor. I think my just general point is it's not clarified by Congress when it amended it further. The language, at least in that provision, stays, and it continues the sort of ambiguity that persists to this day. That's why I'm confused about the ambiguity because it says in three now, the civil actions, remedy, fusion, right, blah, blah, available to, and that's what we're asking is, to whom are these civil actions available to? And it says any individual with a disability filing a complaint on paragraph one. And your argument was, look, if Congress had said in that case, in the statute, use the same federal department or agency language it used in one and two, then you would have no issue with there being an action by federal employees. That's correct. My question is why isn't that exactly what Congress did when it said filing a complaint under paragraph one? That means the statute reads any individual filing a complaint, alleging that a federal department or agency fails to comply with subsection A-1. That's exactly what's incorporated because that's what the complaint language, this reference there, is. Anyone filing a complaint under paragraph one, those are complaints against federal department or agencies for failure to comply. So this is unlike other cases. It's not silent. Congress specifically included that reference in the statute. It's not silent. It's a reference back to the very people who sue or who file administrative complaints against federal departments or agencies. That seems a very strong textual hook. Why isn't that a strong textual hook? I think because it overlooks the structure and purpose of the entire Rehabilitation Act and the important differences between employment and public access to information provided by federal agencies. And part of the answer to this is that section 501 of the Rehabilitation Act, before you get to section 508, is what governs employment. And the employment relationship is the primary one. You can file a section 508 complaint. There is no question about that. Federal employees may do that. But when they come to subsection 2 of 508-F, that is where the line stops. The agency has to process those complaints. But it's completely unreviewable. But it doesn't provide remedy for section 508 of the Rehabilitation Act for federal. So if the administrative agency said, we're not going to accommodate, in the exhaustion process, we're not going to accommodate you because we don't like blind people, there would be no judicial review of that. Absolutely not, Your Honor. But it would be under section 501 because the refusal... No, but 501 just gets you accommodations. It's a stronger requirement imposed on federal agencies than just reasonable accommodation. Can we agree with that? Not precisely because both concepts recognize undue burden and that there can be... So 501 is a much narrower obligation on the government... No, I don't believe that either. I'm sorry. No, don't be sorry. Just explain it to me. I think what I mean is for federal employees, it's a routing mechanism, if you will, it's like a channeling mechanism because if you have mechanisms, both of which ended up in federal court for slightly different claims, but they were heavily overlapping  are being used in employment and they're critical in the accomplishment of employees' duties, it is... You would risk inconsistent judgment. You would risk all kinds of administrative havoc in the meantime. I mean, not that you can't. You can do both, but there has to be sort of one outcome and for federal employees, the clearer path is under section 501 and I think Taylor versus Small is instructive. You asked about that when you were talking to my friend on the other side. The analysis there is similar. There are good reasons why Congress would choose to limit the pathways. You have to remember that the Rehabilitation Act does a whole lot of things in a whole lot of different relationships that the federal agencies hold and when they've got their employer hat on, section 501 is the route. Section 508 gets you an administrative complaint, but no more. Congress enacted 508 long after it enacted 501 and in part enacted 508 because it was quite dissatisfied with the progress of adopting technology that would work for everybody, for all employees, including those with disabilities. And so if we just say, well, for federal employees with disabilities, all you get is 501, it seems there was no point to Congress saying 508 covers federal employees, nor would there have been any reason for Congress to have created a separate administrative complaint for federal employees, would there? Yes, of course. And so section 508 comes into the statute in 1986. I think it can be hard now to remember what the world was like in 1986, but I don't believe I had sent an email yet. I believe I had not yet taken a computer science class in school. Technology was not common in the federal government and the resources necessary to invest in that type of technology. Congress had a role in through the Appropriations Authority, but putting that aside. So section 508 does represent a comprehensive obligation of the federal government to develop standards and to have an access for it. That's what the other surrounding provisions in the statute talk about, this access for it that will establish standards and then agencies will be held to them unless they create an undue burden. They didn't use undue burden in 508. They don't have that language. Right. It's not the same as 501. And it was after in the 90s, I think, when they added this cause of action into 508, correct? That was in 1998. OK, so well, there's technology changed a lot by then. I'm an old dinosaur, but I remember, you know, by then, we were all emailing. I was just barely emailing. Well, because you're younger. And it was a new thing. Right. What I would point out, Your Honor, is that the words undue burden do appear in section 508 in section A1 BA. And that's sort of the beginning of all this. It says when we're developing, procuring, maintaining, or using electronic and information technology, each federal department or agency, including the United States Postal Service, shall ensure unless an undue burden would be imposed on the department or agency. That's fair. It goes on and on. That's fair, but it's not reasonable accommodation language. It's not reasonable accommodation language. All I was really pointing out is that reasonable accommodation also recognizes an undue burden concept. They go together in a consistent manner and this sort of obligation to process an administrative complaint is not the same as authorizing a civil action. Under 501, where do you file to exhaust your complaint? For federal employees under 501, where do you where do you file an administrative complaint for exhaustion purposes? I believe they file at the agency of the Department of Justice because FBI is a component of the Department of Justice. With the EEO? With the EEO. Correct. But that's not where you file under 508. No, your 508 under the regulations goes to both that office. It does go there, but it also goes to the office of the chief. The EEO here said we can't handle your 508 complaint. That's what they said in this case. The EEO office dismissed it as not a 501 complaint because it was very expressly only brought under section 501. But they refused to handle and they could have if he had said under 508 they would have handled it. No, they dismissed a 508 complaint. Right. They told him to go talk to the office of chief information officer and check on the status of your pending complaint. Yes. Right. So it seems like Congress has already set up a distinct route for 508 claims that is different than 501 claims. Through the regulations. Yes, I agree with that. That's the intent of the provision. An employee can do either. I don't think there's an election of remedies. I think you can do both. But you can't come into court after you file a section 508 claim with a judicial remedy. That's all. Under your theory who can sue in court under 508? Who can sue in court under 508? Well, that would be an individual who is agreed by an act or failure to act by a recipient of federal assistance or a provider of such assistance. I would have thought you start with 508A and it talks about two groups of people. It talks about disabled federal employees. And we've been talking today and you've made very clear they can never sue a federal agency under 508. Disabled federal employees. Under 508 directly. Right. And then 508A talks about a second category. The second category is disabled members of the public seeking information from federal agencies. So if anybody can sue under 508 it's got to be some people in that category. Yes. Members of the public who are seeking information from a federal agency. But under your theory they can only sue a federal funding provider or recipient. And I think it's Lane talks about how that means a federal funding provider acting as a funding provider. So it seems to me that if anybody under your theory can sue it has to be a disabled member of the public seeking information from a federal agency who is suing a federal funding provider acting as a funding provider. Yes. I agree with that. Okay. And I'm not sure that there's anyone in the world who meets that criteria. Oh. Well let me see if I can think of an example about someone who is seeking tax information from the IRS or how to file tax returns with the IRS. The IRS is not a federal funding provider acting as a funding provider in that scenario I don't think. But if the IRS were using an outside third party that it has a contract with for that service something like that. And I apologize I cut you off. Let me let you spell out that scenario as much in as much detail as you want and then I'm going to go back and think about it. And if I think it doesn't match up with your theory that's going to be hard for me to get on board with your theory. I'll let you spell it out in as much detail as you want the scenario you described. And now that you've given me a second to think about it I'm not sure I want to go all the way down that road because it is not something I've thought deeply about Your Honor. And the idea of Section 508 is that the government can use when it's involved in grant making grants and giving money to people so maybe like a FEMA disaster where it's giving grants to local relief organizations things like that would be a better example. And who is the disabled member of the public seeking information from FEMA who would be able to sue FEMA in its role as a funding provider? I don't think the statute is super clear about who you can sue exactly but perhaps. That's sort of plaintiff's point. Well but our point is that the sort of and my friend on the other side described it as very broad language and also Section 508 is creating obligations  simply not meeting the standard of an unequivocal expression of congressional intent in the way of sovereign immunity and any doubt of course has to be resolved in favor of finding a claim. And it's also I mean why do what why do we have a waiver of sovereign why isn't the APA the waiver of sovereign immunity for this for injunctive actions? That's not an issue before the court based on how the claim has been presented. The APA waives claims not just under the APA. I'm not arguing with you about that. Okay well I just I don't understand why we have to construe this narrowly as a waiver of sovereign immunity when we've already got the waiver of sovereign immunity. I'm just misunderstanding your point. This claim the claim in this case is brought directly under Section 508 and the plaintiff has disclaimed any intent to proceed under the APA. The APA waiver is broader than suits under the Administrative Procedure Act. That's my point. So it doesn't matter that it can still waive sovereign immunity for a suit just under 508 by its terms for injunctive action only of course. But to say that the agency here acted contrary to law the law being 508 we've already got a waiver of sovereign immunity so I don't understand why we're construing it narrowly. That's that's just what I'm misunderstanding. Yeah well we don't of course we don't have the predicates here because we don't have a final agency decision. We don't have all of the prerequisites meant for a valid APA claim in this case because we don't have final agency action. The APA claim that would be closest I suppose would be an unreasonable delay given the six months and a couple of weeks that the plaintiff waited before filing would be difficult under this court's jurisprudence to find to be an unreasonable delay. You're not arguing any jurisdictional barrier. So again it's not a sovereign immunity issue. You're not arguing that the I thought you said it wasn't a jurisdictional barrier as long as a complaint was filed with the chief information officer as it was. There's no jurisdictional barrier here in this case going forward. I think that it's a failure to state a claim because there's no That is not before us and hasn't been argued before. I think it's important just in struggling with the interpretation of the statute which we've now been talking about for a while to remember that where a statute provides some remedies expressly then implying particular other remedies is something the court should hesitate before doing. If the court has no further questions, we ask that the judgment below be affirmed. Any questions? All right. Thank you very much. Appreciate your help. Okay. Ms. Gilbride will give you your two minutes back that we took away from you. Thank you. Just a couple of points in rebuttal. I think Judge Walker's question about who would be able to sue and for what under the government's strained financial  policy. I think the reading of section 508 is very illustrative because there is no reference to federal financial assistance recipients or providers within the text of section 508, yet that is what the government would sort of hinge everything on is whether the government agency from which the member of   government agency served in its role as a federal provider of financial assistance in that moment when I guess it developed the technology or used the technology that seems like a very difficult standard to administer. Just to figure out as a factual matter what is the stream of federal financial  that the government agency procures or develops technology, it is doing so for multiple reasons. To trace that back to whether it happened to be acting in the role of a provider of federal financial assistance, the IRS example that my counterpart gave, if the government didn't want to have liability under section 508, it could never provide any federal financial assistance with regard to tax preparation and would no longer have any obligations under section 508. Congress had the statute was in place, section 508 was in place for 12 years. In 1998, Congress strengthened it by adding an enforcement provision, including a civil action provision that specifically said civil action. It knew about section 501 and reasonable accommodations at that time that had been in place for many years and did not reference that, but what it did reference was federal employees on multiple occasions. It would be an absurd result to write federal employees out of the enforcement provision that Congress enacted in 1998 to give them more protections, more tools of enforcement, because the previous tools of enforcement were not satisfactorily meeting their needs for equal access to technology. And, you know, the last point I would make is that language about who is something the Supreme Court said unequivocally in consolidated rail court that you look to the later enacted statute to figure out who has the  The only thing you borrow from the earlier statute, which here is 505, is how those rights are to be enforced. And the Supreme Court said that is not part of what the federal financial assistance language is not part of what was borrowed. Who can enforce the rights is specified in section 508 itself. Thank you. Thank you very much. The case is submitted.
judges: Millett, Walker, Childs